And our next piece this morning is United States v. Michael Chapman. May it please the court, Vanessa Eisenman for Michael Chapman. This court should remand the case for resentencing because the district court should not have applied the leadership enhancement which resulted in Mr. Chapman being ineligible for safety valve treatment. I realize I'm the second attorney today to come up and make this type of argument, but here the issue really is whether there was any evidence that Mr. Chapman exerted any ongoing supervision or control over his two accomplices, Ms. Hess-Parker and Ms. Tease. Like the other case I think you all heard, the facts are pretty limited and undisputed, but they don't show is any sort of ongoing supervision, ongoing control that this court has said are the hallmarks of a leadership enhancement. Mr. Chapman was running a solo drug operation and on a couple of occasions he asked two so he could have packages delivered to them. Regarding Ms. Hess-Parker, in June of 2021 she agreed to accept a package. Mr. Chapman got tied up. He asked her if she would mind dropping it off at somebody else's house, the end. He paid her $250 for her trouble, which I believe in the drug world is like a Starbucks gift card. On the second occasion, that was three months later, she agreed to accept a package, which was intercepted and she was arrested. That's it as far as Ms. Hess-Parker goes. There was no evidence that she was hired as an underling in Mr. Chapman's solo drug operation. There was no evidence that she was required to comply with anything that he asked. He made a couple of requests. This looks a lot more like this court's decision in Cologne where you had the defendant making some very occasional requests to drug couriers to take him different places or drop off the drugs different places and this court said no, this is not leadership, this is not control, this is not ongoing supervision. There's no evidence that they were required to comply. They're just doing a couple of favors on an infrequent basis and that's not enough for a leadership enhancement. It's also kind of similar to this court's decision in Weaver. There it was more of a kind of fronting position and it's kind of fronting somebody drugs enough to show leadership and this court said no, but on the way that it did that, it also said that just because the fact that the defendant was the one who brought the customer into the drug activity does not mean that that's leadership. That's not hiring an underling. That's just presenting an opportunity. And so those are the two cases that I think are the most analogous here and that again, this is a square peg in a round hole here, or the reverse probably. But this is a solo drug operation. This is not a good fit for leadership and another reason why is that if you look at the overall purpose of the guideline, it's to assess relative responsibility and culpability. And here, of course, he's more culpable than the two women whose addresses he asked for. But that's already accounted for because they were allowed to plead guilty to lesser offenses. Phone counts, they were given three months probation, or maybe it's three years, probation, probationary sentences. And he was, by contrast, convicted and admitted to all of his charge conduct. So he is very similar to the average person who is convicted under this statute and there's no need for a leadership enhancement. The manager-supervisor enhancement, this two-level increase at issue here, it doesn't require a long course of conduct. I disagree. It doesn't have to be a long course of conduct, but this court has said that there needs to be something ongoing. Like I said, in the Cologne case, the court said not only is it not warranted to have a three or four level in that case, but he doesn't require any supervision because he's making occasional requests. If we think about a supervisor at our work, right, it's not, they don't just kind of come out of nowhere, ask if you can do them a favor, and then leave and nothing else ever happens. And that's more akin to what happened here with Mr. Chapman. By contrast is the Tran case that this court decided and that the government cited fairly recently. There, there was kind of ongoing supervision, ongoing organization because he, the defendant there, was kind of the leader of the suppliers and he organized payments that came from the buyers and decided who got what and he had discretion over that. This court said more than five times. This is more like the case of, I think it's Mankiewicz. What about U.S. v. Anderson, United States v. Anderson, that's the drug supplier one time going to Chief Sykes' question where there was a one-time single transaction. We found that the 3B1.1C adjustment was appropriate. I'm sorry. I'm not familiar enough with the facts of that to make an argument. That's fine. That's fine. Yeah, I apologize for that. But was there a coordination of the deliveries? Let's look at Haas-Parker instead of the women together. Sure. Was there direction given? He requested that the testimony or the PSR, the facts in the PSR which the district court adopted and what the district court found is that on, she admitted on two occasions he asked her if he could send packages to her address. She said yes. So the package, the first time the package was delivered, he called her up again and he said, I'm stuck in Chicago. Can you take this to Ms. Tease's house? She said yes. And for that, for her trouble doing that, he gave her $250. So if you want to say directions, I guess, but again, Cologne says like just occasionally asking somebody for favors or requests to do something, that's not enough unless there's some sort of control, unless there's some sort of ongoing, I think Figueroa is the case that with the ongoing supervision. You have to have some sort of, you have to be playing a role, not just asking for a favor. And that's what would distinguish this type of case as well. Any other questions? I'll reserve the rest of my time. Thank you. Thank you. Mr. Koenig. Good morning. May it please the Court. My name is Jonathan Koenig. I appear on behalf of the United States. In deciding whether Michael Chapman merited a two-level enhancement under 3B1.1c, the district judge made a common-sense assessment of Chapman's relative culpability and determined that, in fact, Chapman had organized and led others and thus deserved the enhancement. That straightforward determination was not erroneous, clearly, or otherwise, and it should be affirmed. First, it's very clear that Chapman made the arrangements for various flying trips to California and for sending drugs from California to Green Bay. The people he trusted to receive those packages and sometimes to forward them on to others in Green Bay were Kelsey Haas-Parker and Holly Teese. I referred to Holly and, excuse me, Haas-Parker and Teese as associates in my brief, but they were, for purposes of Chapman's drug business, more like employees. They may also have been friends and acquaintances, but structurally, it appears that he recruited them. The word that Judge Griesbach used was, involved them. There's no evidence that they would otherwise have been involved in the drug trade except as customers. Neither had any criminal history. Chapman used them and, in Haas-Parker's case, paid her to avoid the risk of transporting drugs himself and using his own address for deliveries. That is a fairly common thing for drug dealers to do, to insulate themselves from activity that will draw attention. Just as common, Chapman kept the lion's share of the proceeds, which is another one of the factors identified in the guidelines commentary. A kilo of meth was worth thousands of dollars at the time, perhaps as much as $8,000 or $9,000 in Green Bay. And the September package alone contained about four and a half kilograms of meth. Yet, Haas-Parker expected to be paid just $250, as she had been in June for the previous delivery. Was there evidence that they were aware, Haas-Parker or Tess, that the packages contained drugs? It was variable. I think in the case of Tess, she was a little vague. It might have been marijuana. She seemed to know it was some kind of controlled substance. Haas-Parker, I believe, had a little more certain understanding of what was going on. As I stand here, I don't recall exactly, but there was certainly some evidence of that, and it's reflected in the PSR. I would like to talk about Cologne and Weaver briefly. The people that Chapman organized or led stood in a different relationship to him than the couriers in Cologne, who, as I understand it, worked for Cologne's supplier, and of whom Cologne made certain requests. That's the word that is used by the court in the Cologne decision. And they weren't like the defendant's customers in Weaver, either, who were drug dealers in their own right, even if Weaver did occasionally exhort them to move his product. So we think those cases are distinguishable. And regardless, we think that there was a level of control. Not one of the factors in the guideline commentary is control. And although no one factor is required, he did exercise some control, even if he didn't coerce Haas, Parker, Ortiz, or as far as we know, induce fear in them. When I was preparing on the train this morning, I was looking at the must-read case, and it said to me, maybe I should read that case. Judge Kaney, writing for the court in that opinion, said control does not mean that others must have, quote, played marionette to the defendant's puppeteer, close quote. Rather, the defendant may simply have organized or in some way directed another. And that's, I submit, what we had in this case. Chapman asked these women to do things for him, and they complied. There was some risk to them in doing so, since this was obviously a legal activity and there was at least some level of knowledge. So it wasn't a casual thing at all. And also very significantly, according to paragraphs 13 and 35 of the PSR, he instructed Ts to lie for him if contacted by law enforcement. That suggests a hierarchical relationship based on some level of control. The words used in the PSR, which is the sole factual basis for this enhancement, are direct and instruct, direct and instruct. Not request, not hey, do a favor for a friend, but direct and instruct. Before I sit down, I did want to clarify a reference to $12,000 on page 13 of our brief. This was flagged in Ms. Eisenman's brief in a footnote. And including the $12,000 figure in my factual summary, I was relying on my sentencing hearing. When I did a little digging, I couldn't really figure out where that number came from. And Ms. Eisenman makes a good point that the judge did not make a specific finding about the $12,000. So if you just strike the $12,000, you will have a more accurate idea of what transpired. It doesn't change the fact that Haas-Parker both received and then redelivered drugs for Chapman. That's described in paragraph 13 of the PSR. So to conclude, subsection C of 3B1.1 is a perfect fit for the facts of this simple case in which Chapman was manifestly an organizer or leader of others within the plain meaning of those terms. Did you want to address the 3B1.2 mitigation argument? Not really except to say that I couldn't find any support for that argument in this circuit or any other circuit. I'm not sure that I understand the argument fully. Either there's a separate guideline for less culpable defendants and there's another one that applies in this case for leaders. I'm not sure what's to be gained really by melding the language from those two separate guidelines, especially in an area that already has some complexity to it, especially when interpreting the first two subsections of 3B1.1. So I guess that's about all I would have to say about that argument, unless you have a follow-up question. I don't. Thank you. We would ask you to affirm, unless there are any follow-up questions, I'll rest and then brief. Thank you. Thank you. Ms. Eisenman. Thank you. Maybe I can clarify Judge Pryor's question first. I didn't intend that, and I'm sorry if there was any confusion, as like a standalone argument. What I saw that as is the minimal participant guideline, which is right after the aggravating guideline, it just kind of illustrates what the purpose of these guidelines are, the aggravating and the mitigating, right? And the purpose is relative culpability. That's very clear, right? And what we're worried about is relative culpability within a drug organization and relative culpability in terms of other people similarly charged, right? We want defendants who are more culpable, who have played a bigger role, to get higher guidelines. We have no problem with that. But that doesn't fit this case, because the only two comparators in his solo operation are people who are obviously less culpable in that they didn't even get charged, or they didn't even get convicted of the same offense. They were allowed to plead guilty to phone call. So of course he's not similarly culpable, and his guidelines wouldn't look anywhere near their guidelines. So you don't need an enhancement for that. And then as far as people who are normally convicted of this same offense, he's been convicted of all of his conduct. He wasn't allowed to plead guilty to a lower offense. So you don't have that kind of relative culpability. So there's no need to enhance him, because his guidelines are a good reflection of his conduct already. So that's what I meant that for, not as a standalone argument. Just a couple of quick things. I still think Cologne is the best case. And I think if the government's right, then Cologne was wrongly decided, because there were multiple requests there. This court's decision didn't hinge on the fact that the drug couriers worked for the suppliers. It hinged on the fact that the drug couriers were not under the defendant's control, and not under his ongoing supervision. That's the same thing here. There's no requirement that these women comply. They agreed. They said yes. That doesn't mean they're required to comply. Otherwise, every time somebody recruited an accomplice or involved somebody in there, you would need a leadership enhancement. And it's not that... Sorry, I lost my train of thought. Oh, and as far as ongoing supervision, again, this was like one time in June and one time in September. This is not anything ongoing. He hasn't hired them to join his drug operation. He asked them a couple of times if they would receive packages for him. So I think Cologne is on point, and it's not distinguishable for the fact that those drug couriers worked for the supplier. The point was that they weren't required to comply, and they weren't under ongoing supervision. Same thing with the Mankiewicz case, where the son involves his dad in storing drugs for him. Again, if all that was necessary for leadership enhancement would be that one person is more culpable than the other, then there should have been a leadership enhancement in that case. But this wasn't an ongoing thing. This wasn't a requirement to comply. This was kind of a one-off, and this case is more like those one-off cases. So, thank you. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.